UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GREGORY M. NOLFI, et al. ) | Case Nos. 5:06CV260 |
| ) | 5:06CV506 |
| Plaintiffs, ) | JUDGE JOHN R. ADAMS |
| vs. ) | |
| ) | [Resolving Doc. #54] |
| OHIO KENTUCKY OIL CORP., et al., ) | |
| ) | MEMORANDUM OF OPINION |
| Defendants. ) | |

This matter is before the Court upon a motion for summary judgment filed by Defendants Ohio Kentucky Oil Corp., Carol Campbell as Executrix of the Estate of William Griffith, and Carol Campbell individually.  In their motion, Defendants seek summary judgment on the claims raised by Plaintiffs Gregory Nolfi as Successor Trustee under the Frederick E. Nonneman Declaration of Trust, Anita Nonneman as the Executrix of the Estate of Frederick Nonneman, and Rena Nonneman.  Defendants claim that Plaintiffs' federal securities non-registration claims are barred by the statute of limitations and contend that Plaintiffs' federal securities fraud claims are unsupported by the evidence.  The Court has been advised, having reviewed the parties' extensive briefing, exhibits, pleadings, and applicable law.  For the reasons stated herein, Defendants' motion is GRANTED in part and DENIED in part.

**I.  Facts**

Frederick E. Nonneman invested in oil and gas joint ventures and limited partnerships offered by Defendant Ohio Kentucky Oil Corporation ("Ohio Kentucky") from 1986 through

1

2003.  Prior to 2001, his investments averaged less than $500,000 per year.  From 2001 to 2003, however, when Mr. Nonneman was in his mid-to late-eighties and in declining health, he invested $9,377,436 in oil and gas programs offered by Ohio Kentucky.  Of his total Ohio Kentucky investments for the period 2001-2003, Mr. Nonneman invested $8,230,286 in certain joint ventures and limited partnerships.  These investments included $6,780,986 in 33 joint ventures identified individually in paragraphs 19 through 51 of the First Amended Complaint (Doc. 18) and $1,449,300 in ten limited partnerships identified in paragraphs 53 through 62 of the First Amended Complaint.  Doc. 18 at ¶¶ 9 and 19-62.

Mr. Nonneman formed Fencorp Co. (hereinafter "Fencorp") in 1985.  Fencorp is an investment company that was owned by Mr. Nonneman, some of his children, and certain trusts for the benefit of some of Mr. Nonneman's grandchildren.  From 2000 to 2003, Fencorp invested $4,007,349.50 in oil and gas programs offered for sale by Ohio Kentucky.  These investments included $3,313,999.50 in 21 joint ventures identified in paragraphs 18 through 38 and $693,350 in 5 limited partnerships identified in paragraphs 40 through 44 of the Complaint (Doc. 1) filed in Case No. 5:06CV0506.

The programs all involved oil and gas exploration--drilling wells to find oil and gas in, inter alia, the States of Kentucky, Tennessee and Pennsylvania.  Tax deductions were available to investors in the oil and gas programs.  117 of the 128 wells drilled by Ohio Kentucky were dry holes and none of the wells returned Mr. Nonneman's investment, let alone any profit.  Rena Nonneman is Mr. Nonneman's wife and she entered into some of the investments in 2003.  Mr. Nonneman either entered into the investments on behalf of the Frederick E. Nonneman Declaration of Trust dated August 19, 1994, or transferred his interest to the trust.  Mr.

Nonneman also transferred half of his interest to his wife.  In late 2003, Gregory M. Nolfi was designated as successor trustee under the trust.

William M. Griffith was the founder of Ohio Kentucky and served as its vice-president at all times pertinent to the present action until his death on August 17, 2004.  Carol L. Campbell is Mr. Griffith's daughter and served as president of Ohio Kentucky at all times relevant to the case at bar.

On December 22, 2004, Plaintiffs Gregory M. Nolfi, as successor Trustee under the Frederick E. Nonneman Declaration of Trust dated August 19, 1994, as amended, Frederick E. Nonneman, and Rena Nonneman (hereinafter "Plaintiffs") filed a complaint against defendants Ohio Kentucky, Carol L. Campbell, individually, and Carol L. Campbell, as Executrix of the Estate of William M. Griffith, Deceased (hereinafter "Defendants") in the Cuyahoga County, Ohio Common Pleas Court, being Case No. CV-04-550444 (the "Cuyahoga County Action"). The Cuyahoga County Action was not a securities fraud case; rather, Plaintiffs' central theories were undue influence, common law fraud, breach of contract, and breach of fiduciary duty arising from the allegation that over 90% of the oil and gas wells drilled by the defendants resulted in dry holes.

Plaintiffs contend that they first learned the facts and circumstances giving rise to their federal securities claims (Section 10b and Section 12(a)(1)) and Ohio Blue Sky claims during the course of discovery in the Cuyahoga County Action.  Plaintiffs allege that, at that time, they became aware of Defendants' knowingly fraudulent scheme to publicly solicit investments in their oil and gas securities through a series of fraudulent misrepresentations; and in violation of their Regulation D filing exemption due to the payment of commissions, general solicitation of investors (i.e., "knock lists," "do-not-call lists," and "accredited investor lists"), and

3

misrepresentation, and failure to disclose excessive costs and profits.  Plaintiffs assert that Defendants raised large sums of money by inflating estimated drilling costs and padding overhead expenses with personal expenses that had nothing to do with finding oil and gas.  Furthermore, Plaintiffs allege that the excess money raised by Defendants did not go into drilling wells; it did not go into exploring for more oil and gas; it was not returned to investors.  Rather, according to the plaintiffs, Ohio Kentucky simply kept it.

A trial date of January 9, 2006 was set in the Cuyahoga County Action.  Plaintiffs moved the Cuyahoga Common Pleas Court for a continuance until April 2006, when Mr. Nonneman was scheduled to return to Ohio from Florida.  As the trial date approached, the Cuyahoga County Court had not yet ruled on the Motion for Continuance.  Therefore, on January 5, 2006, Plaintiffs voluntarily dismissed their Cuyahoga County Complaint without prejudice.

The very next day, on January 6, 2006, Defendants commenced an action in the Stark County, Ohio Common Pleas Court, being Case No. 2006CV00078 (the "Stark County Action").  Defendants sought declaratory relief as to essentially the exact same allegations raised in Plaintiffs' original Cuyahoga County Complaint.  On February 7, 2006, Plaintiffs filed their Answer and Counterclaims in the Stark County Action, reasserting as counterclaims each of the claims originally presented in Cuyahoga County, as well as additional counterclaims premised on violations of the Ohio Blue Sky laws.

However, five days prior to filing their Counterclaims in the Stark County Action, on February 2, 2006, Plaintiffs initiated the present action alleging (1) violations of the Securities Act of 1933 (the "Securities Act") through the sale of unregistered securities, and (2) securities fraud in violation of the Securities and Exchange Act of 1934  (the "Exchange Act") in connection with their investments in oil and gas joint ventures and limited partnerships during

4

2001 through 2003. Plaintiffs were required to file the present action against Defendants in federal court because the federal courts have exclusive jurisdiction over Plaintiffs' claim alleging violations of Section 10(b) of the Exchange Act. See Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Thus, because the present action was filed prior to Plaintiffs' Counterclaims in the Stark County Action, this Court was the first tribunal to exercise jurisdiction over the federal securities claims.

On March 6, 2006, Fencorp initiated Case No. 5:06CV0506 alleging (1) violations of the Securities Act and (2) Ohio Blue Sky laws through the sale of unregistered securities, (3) securities fraud in violation of the Exchange Act, (4) misrepresentation, (5) fraud, (6) breach of fiduciary duties, and (7) breach of contract in connection with its investments in oil and gas joint ventures and limited partnerships during 2000 through 2003.

On March 20, 2006, Defendants filed their Motion to Dismiss (Doc. 5) the present action. Defendants also filed a Motion to Dismiss (Doc. 6) in Case No. 5:06CV0506. A Case Management Conference was held on June 19, 2006, at which time the Court announced that the pending motions to dismiss would likely be denied as to the § 10(b) and Rule 10b-5 claims and that additional research was necessary as to the statute of limitations/statute of repose arguments regarding the § 12(a)(1) claims. See Transcript (Doc. 16) at 44-45, 51, and 59. Thereafter, on July 19, 2006, Plaintiffs filed a First Amended Complaint in the present action, including as additional claims each of the Ohio Blue Sky and Ohio common law claims which were asserted as Counterclaims in the Stark County Action. On July 31, 2006, Defendants filed a Motion to Dismiss First Amended Complaint (Doc. 19). On September 28, 2007, this Court granted in part and denied in part the pending motions to dismiss. (Doc. 35). On February 25, 2008,

Defendants moved for summary judgment on the claims raised by Nolfi and the Nonnemans. Plaintiffs responded in opposition to the motion. The matter is now ripe for the Court's ruling.

## II. Legal Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). The initial burden of showing the absence of any "genuine issues" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed.R. Civ.P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. (quoting Fed.R. Civ.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id*. at 252. Moreover, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); Fed.R. Civ.P. 56(e)(2) states:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not

6

> so respond, summary judgment should, if appropriate, be entered against that party.

Summary judgment analysis asks whether a trial is necessary and therefore is appropriate when there are no genuine issues of fact. *Anderson,* 477 U.S. at 250.

### III.   Legal Analysis

#### A. First Claim for Relief

In the First Claim for Relief, Plaintiffs seek recovery against Defendants under § 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a)(1), alleging the sale of unregistered securities occurring between January 24, 2001 and October 21, 2003. Doc. 18 at ¶¶ 19 and 62. The statute of limitations for Plaintiffs' federal securities non-registration claims is set forth in 15 U.S.C. § 77m:

> No action shall be maintained to enforce any liability created under section … 77l(a)(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77l(a)(1) of this title more than three years after the security was bona fide offered to the public[.]

As this Court explained in ruling on the motions to dismiss this matter, the time limits expressed in § 77m are cumulative. Plaintiffs, therefore, must bring their cause of action "***both*** within one year of the alleged violation ***and*** within three years of the time the security was first bona fide offered to the public." *Ballenger v. Applied Digital Solutions, Inc.*, 189 F.Supp.2d 196, 199 (D.Del. 2002) (emphasis in original) (citing *Morley v. Cohen*, 610 F.Supp. 798, 815 (D.Md. 1985)).

In ruling on the motion to dismiss, this Court dismissed each of Plaintiffs' claims that fell outside the three year statute of repose. The Court, however, did not review the issue of the one year statute of limitations. Contrary to Plaintiffs' contentions, the Court has not impliedly ruled on this issue.

Plaintiffs' concede that that their non-registration claims fall outside of the one year statute of limitations. Plaintiffs, however, argue that equitable tolling should apply because their claims are atypical non-registration claims. The Court disagrees.

Initially, Plaintiffs are correct that equitable tolling is generally read into every federal statute. A majority of courts, however, have found that equitable tolling is improper for non-registration claims.

> With regard to plaintiffs' equitable tolling argument, the Supreme Court recently stated that "the equitable tolling doctrine is fundamentally inconsistent with the 1- and-3-year" statute of limitations such as that in section 13. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991). In light of this unequivocal declaration, the Court refrains from applying the equitable tolling doctrine to plaintiffs' action.

*Hardy v. First Am. Bank, NA*, 774 F.Supp. 1078, 1081-82 (M.D.Tenn. 1991). This result was more fully explained in *Hanson v. Johnson*, No. Civ. 02-3709, 2003 WL 21639194 (D.Minn. June 30, 2003).

> [T]he plain text of § 13 makes clear that a § 12(a)(1) claim must be brought within one year after the violation. Under the explicit language of § 13, the limitations period runs from the date of the violation irrespective of whether the plaintiff knew of the violation. Plaintiff has cited no authorities for why this Court should apply a general maxim in the face of clear statutory language.
>
> Second, other parts of § 13 demonstrate that if Congress wanted to allow for a discovery rule in § 12(a)(1) claims, it could have expressly done so. For example, § 13 also contains a statute of limitations applicable to § 12(a)(2) of the Securities Act. This passage provides that no action shall be maintained unless brought within one year after the discovery of the untrue statement. Thus, Congress's legislative message is clear; by including a discovery rule limitation for certain claims, in the very same statutory provision, Congress clearly reflected its intent to prohibit application of the discovery rule to § 12(a)(1) claims.

*Id.* at *3 (internal citations and quotations omitted). *See also* Thomas Lee Hazen, *Law of Securities Regulation*, § 7.10[3] ("Notwithstanding … scattered decisions to the contrary, the

8

apparent majority of courts have indicated that section 12(a)(1)'s one-year period should not be tolled.").

This Court agrees that the plain language of 15 U.S.C. § 77m demonstrates Congress's intent that section 12(a)(1) claims not be subject to equitable tolling.  Plaintiffs' non-registration claims admittedly fall outside the one year statute of limitations.  Summary judgment in favor of the Defendants on these claims, therefore, is appropriate.

### B.  Second Claim for Relief

The § 10(b) and Rule 10b-5 claim in the Second Claim for Relief is based on the allegation that Defendants misrepresented the estimated costs and profit of drilling oil and gas wells connected with the subject investments and failed to disclose that unexpended investments would be kept by Ohio Kentucky.

Defendants first contend that Plaintiffs have produced insufficient evidence of the scienter element of their claim.  This Court disagrees.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that a complaint for securities fraud include a "strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  The "[i]nferences must be reasonable and strong--but not [necessarily] irrefutable."  *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 683 (6th Cir. 2005), quoting *Helwig v. Vencor, Inc.*, 251 F.3d 540, 553 (6th Cir. 2001) (alterations in original).  "A complaint will survive … only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2510.  "[M]otive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference."  *Id.* at 2511.

> [T]he court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically.  In sum, the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?

*Id.* (internal citation omitted).  The Court notes that the above cases deal with the pleading standard required for these claims, but finds that the underlying rationale is applicable to the summary judgment setting as well.

In their motion, Defendants contend that Plaintiffs have relied solely upon alleged fraudulent profit estimates.  Defendants assert that this evidence is insufficient to demonstrate the required scienter.  In support, Defendants allege that a cost accounting system was not in place when the anticipated profits were determined and that when overhead is properly allocated, the anticipated profits do not materially exceed income minus actual costs.  Defendants, however, ignore the evidence relied upon by Plaintiffs.

In their response, Plaintiffs introduced evidence that as Frederick Nonneman's mental faculties deteriorated, his investments with Defendants escalated.  Lois Nonneman noted in her affidavit that William Griffith pressured her father to invest, sometimes giving him less than 24 hours to decide on sizeable investments.  Rena Nonneman also indicated that Griffith lavished her with gifts to induce further investments.  There is also conflicting evidence regarding the amount of profit Defendants received from dry wells.  For example, Plaintiffs presented evidence that Defendant retained up to 58% of investments that went unexpended for dry wells.  In contrast, Defendants assert that without a cost accounting system in place, it is nearly impossible to determine the true amount of profit from each well.

Based upon the evidence presented, the Court finds that an inference of scienter is at least as strong as any competing inference.  Plaintiffs produced evidence that if believed would demonstrate that Defendants took advantage of a wealthy elderly gentleman in failing mental

health. They demanded that he make decisions with little time to reflect and lavished his wife with gifts to encourage further investments. While the parties disagree over the amount that anticipated profits were overstated, the inference of scienter from the facts presented is at least as strong as any innocent inference that could be drawn from the facts.

Defendants next argue that Plaintiffs cannot demonstrate loss causation. In this respect, Defendants' assertions are legal arguments, not fact based arguments. These arguments merely reiterate the arguments raised in support of Defendants' motion to dismiss. The Court finds no reason to revisit its prior decision in which it found that these arguments lacked merit.

Defendants also contend that Plaintiffs cannot demonstrate reliance. Defendants first assert that since Frederick Nonneman and William Griffith have passed away, it is not possible for Plaintiffs to demonstrate actual reliance. "[B]ecause direct proof of actual reliance is difficult, actual reliance may be proven by circumstantial evidence of reliance." *In re Kreps*, 700 F.2d 372, 375 (7th Cir. 1983). While this rule found its origin in bankruptcy, there is nothing to suggest that it should not apply herein. To accept Defendants' standard, requiring direct proof of actual reliance, would mean that an estate could never be successful on any cause of action which included reliance. The Court declines to adopt such a position. Given the sizeable increases in Mr. Nonneman's investments as his health declined, there is circumstantial evidence that he relied on the representations made by Defendants. Accordingly, there remains a genuine issue of material fact with respect to actual reliance.

Defendants next argue that any reliance by Plaintiffs was not reasonable. Specifically, Defendants assert that Plaintiffs signed a non-reliance clause, thereby negating any claim that reliance was reasonable. This Court disagrees.

11

The Sixth Circuit recently explained the law regarding reasonable reliance in the context of securities claims.

> In the first place, the law of our circuit requires us to engage in a contextual analysis in order to ascertain whether, as a matter of law, a party has introduced sufficient evidence of reasonable reliance to withstand summary judgment. In assessing reasonable or justifiable reliance on summary judgment, we apply a recklessness standard in looking at the context of the asserted reliance. *Wright v. Nat'l Warranty Co., L.P.,* 953 F.2d 256, 261 (6th Cir.1992). Among the factors that we have employed in the past to ascertain reasonable reliance "in a non-insider context" are
>
> (1) The sophistication of expertise of the plaintiff in financial and securities matters; (2) the existence of long standing business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations.
>
> *Ibid.* To erect a *per se* rule with respect to non-reliance clauses would undermine the essential point of undertaking a contextual analysis, and we do not choose to adopt such a blanket rule now.
>
> Moreover, we do not read the opinions of our sister circuits in the appellees' preferred manner: far from erecting a *per se* rule foreclosing the possibility of recovery for deceit in all situations where an allegedly injured party has signed a non-reliance clause, these opinions simply accord an appropriate weight to evidence of the signing of such a clause in the entire context of the alleged fraud.

*Brown v. Earthboard Sports, USA*, 481 F.3d 901, 921 (6th Cir. 2007). Despite this test, Defendants have offered no evidence other than the fact that a non-reliance clause was signed. In contrast, Plaintiffs' evidence creates an issue of fact with respect to the issue of reasonable reliance.

As detailed above, Plaintiffs introduced evidence of Mr. Nonneman's failing mental health during the time of these investments. They also presented evidence of a longstanding personal and business relationship between Mr. Nonneman and Mr. Griffith and evidence of a fiduciary relationship. Moreover, they have introduced evidence that the alleged fraud was

nearly impossible for Mr. Nonneman to have detected. Consequently, the Court finds that a genuine issue of fact remains regarding whether reliance on the representations made by Defendants was reasonable.

Finally, Defendants contend that they had no duty to disclose certain facts and that the information they supplied was "soft information" or estimates rather than hard facts.

> Hard information is typically historical information or other factual information that is objectively verifiable. Publicly disclosed, hard information is actionable if false and material.
>
> Soft information, on the other hand, includes predictions and matter of opinions. The failure to disclose soft information is actionable only if it is virtually as certain as hard facts.

*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 669 (6th Cir. 2005) (internal citations and quotations omitted). Defendants assert that their profit estimates were soft information and therefore no duty to disclose existed. Defendants, however, ignore the claims raised by Plaintiffs. Plaintiffs contend that Defendants violated a duty to disclose related to the fact that Defendants retained unexpended monies when dry wells were drilled. This information was readily available to Defendant and was factual in nature. These omissions are therefore related to "hard facts" and are actionable. Summary judgment on the ground raised by the Defendant is not appropriate.

**IV. Conclusion**

Based upon the reasons stated herein, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Plaintiffs' claims under § 12(a)(1) are dismissed, but their claims under § 10(b) survive.

IT IS SO ORDERED.

DATED: May 12, 2008                           /s/  John  R.  Adams
                                                 JUDGE JOHN R. ADAMS