UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY M. NOLFI, et al. | ) | Case Nos. 5:06CV260 |
| | ) | 5:06CV506 |
| | ) | |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | [Resolving Doc. #53] |
| OHIO KENTUCKY OIL CORP., et al., | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendants. | ) | |

This matter is before the Court upon a motion for summary judgment filed by Defendants Ohio Kentucky Oil Corp., Carol Campbell as Executrix of the Estate of William Griffith, and Carol Campbell individually. In their motion, Defendants seek summary judgment on the claims raised by Plaintiff Fencorp Co. Defendants claim that Fencorp's federal securities non-registration claims are barred by the statute of limitations and contend that Fencorp's federal securities fraud claims are unsupported by the evidence. In addition, Defendants assert that Fencorp's state law claims are barred by the statute of repose and/or preempted. The Court has been advised, having reviewed the parties' extensive briefing, exhibits, pleadings, and applicable law. For the reasons stated herein, Defendants' motion is GRANTED in part and DENIED in part.

**I.   Facts**

Frederick E. Nonneman invested in oil and gas joint ventures and limited partnerships offered by Defendant Ohio Kentucky Oil Corporation ("Ohio Kentucky") from 1986 through

1

2003.  Prior to 2001, his investments averaged less than $500,000 per year.  From 2001 to 2003, however, when Mr. Nonneman was in his mid-to late-eighties and in declining health, he invested $9,377,436 in oil and gas programs offered by Ohio Kentucky.  Of his total Ohio Kentucky investments for the period 2001-2003, Mr. Nonneman invested $8,230,286 in certain joint ventures and limited partnerships.  These investments included $6,780,986 in 33 joint ventures identified individually in paragraphs 19 through 51 of the First Amended Complaint (Doc. 18) and $1,449,300 in ten limited partnerships identified in paragraphs 53 through 62 of the First Amended Complaint.  Doc. 18 at ¶¶ 9 and 19-62.

Mr. Nonneman formed Fencorp Co. (hereinafter "Fencorp") in 1985.  Fencorp is an investment company that was owned by Mr. Nonneman, some of his children, and certain trusts for the benefit of some of Mr. Nonneman's grandchildren.  From 2000 to 2003, Fencorp invested $4,007,349.50 in oil and gas programs offered for sale by Ohio Kentucky.  These investments included $3,313,999.50 in 21 joint ventures identified in paragraphs 18 through 38 and $693,350 in 5 limited partnerships identified in paragraphs 40 through 44 of the Complaint (Doc. 1) filed in Case No. 5:06CV0506.

The programs all involved oil and gas exploration--drilling wells to find oil and gas in, inter alia, the States of Kentucky, Tennessee and Pennsylvania.  Tax deductions were available to investors in the oil and gas programs.  117 of the 128 wells drilled by Ohio Kentucky were dry holes and none of the wells returned Mr. Nonneman's investment, let alone any profit.  Rena Nonneman is Mr. Nonneman's wife and she entered into some of the investments in 2003.  Mr. Nonneman either entered into the investments on behalf of the Frederick E. Nonneman Declaration of Trust dated August 19, 1994, or transferred his interest to the trust.  Mr.

2

Nonneman also transferred half of his interest to his wife.  In late 2003, Gregory M. Nolfi was designated as successor trustee under the trust.

William M. Griffith was the founder of Ohio Kentucky and served as its vice-president at all times pertinent to the present action until his death on August 17, 2004.  Carol L. Campbell is Mr. Griffith's daughter and served as president of Ohio Kentucky at all times relevant to the case at bar.

On December 22, 2004, Plaintiffs Gregory M. Nolfi, as successor Trustee under the Frederick E. Nonneman Declaration of Trust dated August 19, 1994, as amended, Frederick E. Nonneman, and Rena Nonneman (hereinafter "Plaintiffs") filed a complaint against defendants Ohio Kentucky, Carol L. Campbell, individually, and Carol L. Campbell, as Executrix of the Estate of William M. Griffith, Deceased (hereinafter "Defendants") in the Cuyahoga County, Ohio Common Pleas Court, being Case No. CV-04-550444 (the "Cuyahoga County Action"). The Cuyahoga County Action was not a securities fraud case; rather, Plaintiffs' central theories were undue influence, common law fraud, breach of contract, and breach of fiduciary duty arising from the allegation that over 90% of the oil and gas wells drilled by the defendants resulted in dry holes.

Plaintiffs contend that they first learned the facts and circumstances giving rise to their federal securities claims (Section 10b and Section 12(a)(1)) and Ohio Blue Sky claims during the course of discovery in the Cuyahoga County Action.  Plaintiffs allege that, at that time, they became aware of Defendants' knowingly fraudulent scheme to publicly solicit investments in their oil and gas securities through a series of fraudulent misrepresentations; and in violation of their Regulation D filing exemption due to the payment of commissions, general solicitation of investors (i.e., "knock lists," "do-not-call lists," and "accredited investor lists"), and

3

misrepresentation, and failure to disclose excessive costs and profits. Plaintiffs assert that Defendants raised large sums of money by inflating estimated drilling costs and padding overhead expenses with personal expenses that had nothing to do with finding oil and gas. Furthermore, Plaintiffs allege that the excess money raised by Defendants did not go into drilling wells; it did not go into exploring for more oil and gas; it was not returned to investors. Rather, according to the plaintiffs, Ohio Kentucky simply kept it.

A trial date of January 9, 2006 was set in the Cuyahoga County Action. Plaintiffs moved the Cuyahoga Common Pleas Court for a continuance until April 2006, when Mr. Nonneman was scheduled to return to Ohio from Florida. As the trial date approached, the Cuyahoga County Court had not yet ruled on the Motion for Continuance. Therefore, on January 5, 2006, Plaintiffs voluntarily dismissed their Cuyahoga County Complaint without prejudice.

The very next day, on January 6, 2006, Defendants commenced an action in the Stark County, Ohio Common Pleas Court, being Case No. 2006CV00078 (the "Stark County Action"). Defendants sought declaratory relief as to essentially the exact same allegations raised in Plaintiffs' original Cuyahoga County Complaint. On February 7, 2006, Plaintiffs filed their Answer and Counterclaims in the Stark County Action, reasserting as counterclaims each of the claims originally presented in Cuyahoga County, as well as additional counterclaims premised on violations of the Ohio Blue Sky laws.

However, five days prior to filing their Counterclaims in the Stark County Action, on February 2, 2006, Plaintiffs initiated the present action alleging (1) violations of the Securities Act of 1933 (the "Securities Act") through the sale of unregistered securities, and (2) securities fraud in violation of the Securities and Exchange Act of 1934 (the "Exchange Act") in connection with their investments in oil and gas joint ventures and limited partnerships during

4

2001 through 2003. Plaintiffs were required to file the present action against Defendants in federal court because the federal courts have exclusive jurisdiction over Plaintiffs' claim alleging violations of Section 10(b) of the Exchange Act. See Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Thus, because the present action was filed prior to Plaintiffs' Counterclaims in the Stark County Action, this Court was the first tribunal to exercise jurisdiction over the federal securities claims.

On March 6, 2006, Fencorp initiated Case No. 5:06CV0506 alleging (1) violations of the Securities Act and (2) Ohio Blue Sky laws through the sale of unregistered securities, (3) securities fraud in violation of the Exchange Act, (4) misrepresentation, (5) fraud, (6) breach of fiduciary duties, and (7) breach of contract in connection with its investments in oil and gas joint ventures and limited partnerships during 2000 through 2003.

On March 20, 2006, Defendants filed their Motion to Dismiss (Doc. 5) the present action. Defendants also filed a Motion to Dismiss (Doc. 6) in Case No. 5:06CV0506. A Case Management Conference was held on June 19, 2006, at which time the Court announced that the pending motions to dismiss would likely be denied as to the § 10(b) and Rule 10b-5 claims and that additional research was necessary as to the statute of limitations/statute of repose arguments regarding the § 12(a)(1) claims. See Transcript (Doc. 16) at 44-45, 51, and 59. Thereafter, on July 19, 2006, Plaintiffs filed a First Amended Complaint in the present action, including as additional claims each of the Ohio Blue Sky and Ohio common law claims which were asserted as Counterclaims in the Stark County Action. On July 31, 2006, Defendants filed a Motion to Dismiss First Amended Complaint (Doc. 19). On September 28, 2007, this Court granted in part and denied in part the pending motions to dismiss. (Doc. 35). On February 25, 2008,

Defendants moved for summary judgment on the claims raised by Fencorp. Fencorp responded in opposition to the motion. The matter is now ripe for the Court's ruling.

## II. Legal Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R. Civ.P.56(c). The initial burden of showing the absence of any "genuine issues" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed.R. Civ.P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. (quoting Fed.R. Civ.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id*. at 252. Moreover, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); Fed.R. Civ.P. 56(e)(2) states:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not

6

so respond, summary judgment should, if appropriate, be entered against that party.

Summary judgment analysis asks whether a trial is necessary and therefore is appropriate when there are no genuine issues of fact. *Anderson,* 477 U.S. at 250.

### III. Legal Analysis

#### A. § 12(a)(1) claims

Fencorp seeks recovery against Defendants under § 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a)(1), alleging the sale of unregistered securities occurring between January 24, 2001 and October 21, 2003. For the reasons stated in this Court's order on Defendants' motion for summary judgment in the lead case in this matter (Doc. 77), Defendants are entitled to summary judgment on the § 12(a)(1) claims.

#### B. § 10(b) and Rule 10b-5 claims

The § 10(b) and Rule 10b-5 claims are based on the allegation that Defendants misrepresented the estimated costs and profit of drilling oil and gas wells connected with the subject investments and failed to disclose that unexpended investments would be kept by Ohio Kentucky. For the reasons stated in this Court's order on Defendants' motion for summary judgment in the lead case in this matter (Doc. 77), summary judgment is not appropriate on these claims.

#### C. State law Blue Sky claims

Defendants raise two contentions with respect to the Ohio Blue Sky claims raised by Fencorp. Defendants first assert that any claims based on conduct prior to March 6, 2002 are barred by Ohio's statute of repose. Defendants next argue that any remaining claims are preempted by federal law. The Court finds no merit in either of these contentions.

Defendants are correct that statutes of repose are generally viewed as substantive and therefore generally may not be given retroactive effect. *See Phillips v. Motrim, Inc.,* 1996 WL 753144, at *2 (Ohio Ct. App. Dec. 5, 1996); *State ex rel. Kilbane v. Industrial Comm'n of Ohio*, 744 N.E.2d 708 (Ohio 2001). It does not follow, however, that Fencorp's claims are barred.

On September 16, 2003, Ohio extended the statute of repose for Blue Sky claims from four years to five years. *See* Ohio Revised Code § 1707.43(B), Amendment Note. Defendants assert that applying this amendment in the case at bar is an unconstitutional retroactive application of the statute of repose. This Court disagrees.

Defendants assert that its substantive rights must be measured by the statutes in force on the date of the injury. *See Kilbane*, 744 N.E.2d at 710. Defendants, however, seek to expand *Kilbane*. In *Kilbane,* the plaintiff's injury dictated the applicable substantive law that would apply to *her* claim for benefits. *Kilbane* did not address, nor does it appear that any Ohio court has addressed, the appropriate statute to use in situations such as the one at bar.

It is the running of the statute of repose that creates a substantive right. *Mills v. Wong*, 155 S.W.3d 916, 920 (Tenn. 2005). "If plaintiff fails to file within the prescribed period, the statute gives defendant a vested right not to be sued." *Nolan v. Paramount Homes, Inc.*, 518 S.E.2d 789, 792 (N.C. Ct. App. 1999). In the instant matter, the statute of repose never expired. Rather, prior to the expiration of the statute of repose under these facts, the Ohio General Assembly amended the statute and extended the period to five years. Consequently, at the time of the amendment, Defendants did not have a vested right not to be sued; the Ohio General Assembly extended the period of Defendants' exposure prior to the acquisition of that right. R.C. 1.58(A)(2) provides that the amendment of a statute does not "[a]ffect any … right … previously acquired, accrued, accorded, or incurred[.]" As Defendants never had a vested right

8

under the pre-2003 statute, the Court declines to apply that statute.  Instead, the Court applies the current version of the statute of repose.  To the extent that Fencorp has alleged acts that occurred prior to March 6, 2001, such claims are barred by the statute of repose.  All other claims are properly before this Court.[1]

Defendants also contend that the Ohio Blue Sky claims are preempted by the National Securities Market Improvement Act of 1996 ("NSMIA").  However, the "NSMIA preempts state securities registration requirements only with respect to securities that actually qualify as 'covered securities' under federal law." *Brown v. Earthboard Sports, USA, Inc.,*  481 F.3d 901, 912 (6th Cir. 2007).  "According to Section 18(b)(4)(D) of the 1933 Securities Act, 15 U.S.C. § 77r(b)(4)(D), a 'covered security' is, *inter alia*, any security exempt from federal securities registration 'pursuant to- ... Commission rules or regulations issued under § 4(2)' of the 1933 Act." *Id.* at 909.

Defendant raises two arguments that the investments at issue are "covered securities" that would invoke preemption based on the NSMIA.  Defendants argue that the investments were exempt under Rule 504 and under Rule 506, thereby preempting Plaintiffs' state claims.  The Court finds no merit in either contention.

The Virginia Supreme Court has recently addressed the issue of whether securities that are exempt under Rule 504 are "covered securities."

> We are persuaded now that Rule 504 Regulation D was issued under the authority of § 3(b) of the Securities Act, 15 U.S.C. § 77c(b).  Indeed, the Rule itself references § 3(b), and the adopting release for Regulation D states that Rule 504 "provides an exemption under section 3(b) of the Securities Act." Securities Act Release No. 33-6389, 47 Fed.Reg. 11251 (March 16, 1982). Further, we are persuaded that § 18(b)(4) of the Securities Act does not preempt state law with respect to transactions exempt from registration pursuant to rules issued under §

---

[1] While Fencorp has suggested that the statute of repose is unconstitutional, the parties have not briefed this issue and the Court declines to address it at such a late point in this litigation.

9

> 3(b). In other words, securities issued under § 3(b) are not "covered securities" and, therefore, must be registered under [state law].

*Tanner v. State Corp. Comm'n,* 580 S.E.2d 850, 852-53 (Va. 2003) (footnote omitted). The Court finds the logic expressed in *Tanner* to be sound and hereby adopts the findings of that court. To the extent that the securities at issue could be found to be exempt under Rule 504, such a status does not preempt Fencorp's state law claims.[2]

Defendants next contend that the state law claims are preempted because the securities at issue are "covered securities" based on Rule 506. The Court takes pause at this argument as it illustrates the inconsistencies in Defendants' positions in this litigation. In response to Plaintiffs' motion for summary judgment, Defendants stated as follows: "Summary judgment is precluded because there is a genuine issue of material fact as to whether defendants engaged in a general solicitation[.]" Doc. 64 at 14.[3] However, in their motion for summary judgment, Defendants stated that "it is clear that the practices involved did not constitute a general solicitation." Doc. 53 at 5.

Of course, these types of inconsistencies could be avoided were it not for the inefficient manner in which briefing has occurred in these consolidated cases. In their motion for summary judgment on this issue, Defendants incorporated by reference an argument they had not yet made (the argument was to appear "in their forthcoming response").[4] Doc. 53 at 5. In their opposition to Fencorp's motion for summary judgment on this same issue (the "forthcoming response"), Defendants did not lay out a detailed analysis. Instead, they incorporated by reference the argument raised in their opposition to Plaintiffs' motion for summary judgment in the lead case

---

[2] The Court notes that Defendants withdrew the argument related to Rule 504 following the filing of Fencorp's responsive brief. Doc. 67 at 4.
[3] In that same brief, Defendants have an entire section entitled "There is a Genuine Issue Regarding Whether the Subject Transactions are Exempt From Registration Under Regulation … 506." Doc. 64 at 13.
[4] This act effectively granted Defendants an extension of time to craft their argument without requesting such an extension from the Court.

10

in this matter.  Doc. 24 at 4.  Forcing the Court to jump through numerous hoops just to locate an argument has not served Defendants well in this matter.

Despite the briefing in this matter, the Court has reviewed the record and determined that a genuine issue of material fact exists regarding whether Defendants engaged in a prohibited general solicitation.  17 C.F.R. § 230.502(c) limits the manner in which a security may be offered and remain exempt under Rule 506.

> Except as provided in § 230.504(b)(1), neither the issuer nor any person acting on its behalf shall offer or sell the securities by any form of general solicitation or general advertising, including, but not limited to, the following:
>
> (1) Any advertisement, article, notice or other communication published in any newspaper, magazine, or similar media or broadcast over television or radio; and
>
> (2) Any seminar or meeting whose attendees have been invited by any general solicitation or general advertising[.]

Defendants contend that the evidence does not support a finding that they engaged in a general solicitation.  Specifically, Defendants contend that their "cold calls" were designed to collect information to determine whether they were speaking with accredited investors.  According to evidence submitted by Defendant, it was only after determining that the investors were accredited that sales were solicited.

Courts have found that the practice of cold calling coupled with waiting only one week before make a formal sales offer may constitute general solicitation.  *See S.E.C. v. Credit First Fund, LP*, 2006 WL 4729240 (C.D.Cal. 2006).  However, the S.E.C. has also indicated that generic offerings that fail to reference specific investments may be used to collect investor data without constituting a general solicitation.  *See Bateman Eichler, Hill Richards, Inc.*, S.E.C. No-Action Letter, 1985 WL 55679 (Dec. 3, 1985).  Fencorp has conceded that the script used during cold calls was "generic."  Thus, there is some evidence that the calls would not amount to a

11

general solicitation. Fencorp, however, has produced conflicting evidence on this point. The fact that Defendants' agents sometimes made more than 200 calls a day, spread across the country, certainly suggests a general solicitation. Furthermore, it is unclear whether sales were ever made during these initial cold calls and whether Defendants' sufficiently established a relationship with the investors to avoid the conclusion that they had engaged in a general solicitation. One former employee, Rick Kidwell, indicated that he had placed investors directly into the programs. Doc. 22-16 at 4 ("They either send me a check or they don't.") In contrast, Ohio Kentucky's current general manager, Johnnie Spaulding, stated that only officers of the company were able to place investors into the ventures.[5] Doc. 64-5 at 2. The Court, therefore, concludes that there is a genuine issue of material fact regarding whether the exemption under Rule 506 is applicable. Consequently, Fencorp's Blue Sky claims must be tried.

### D. Remaining State Law Claims

Defendants have treated these remaining claims in a perfunctory manner, offering little evidence in support of its motion. Defendants first assert that any breach of contract claims must be dismissed because Fencorp has failed to seek an accounting of the partnership. This Court disagrees.

The Ohio Supreme Court has held that "the usual and normal remedy for a breach of fiduciary duty or other legal conflict among partners is an accounting." *Dunn v. Zimmerman*, 631 N.E.2d 1040, 1042 (Ohio 1994). The rationale for such a rule is "that until a full accounting had been done, it was impossible to tell, based on the entire scope of partnership transactions, who owed what to whom." *Id.* at 1043. However, the plain language of *Dunn*, "usual and normal remedy," did not create a mandatory obligation to seek an accounting prior to alleging

---

[5] Fencorp seems to imply that the employees of Ohio Kentucky may not contradict one another to create an issue of fact. While an individual may not contradict his own earlier testimony, Fencorp has offered no law to support a determination that every employee of a corporation is bound to the testimony of other employees.

any breach related to a partnership.[6] Moreover, the underlying rationale for requiring an accounting is missing in this matter. Fencorp and Defendants were not in a long-term partnership that involved numerous transactions. Rather, each partnership was limited to one activity, drilling wells. There is no issue regarding the possibility that Fencorp may owe undetermined amounts to Ohio Kentucky or the like. Fencorp made one investment in each partnership and now seeks damages based on a breach of the terms of that partnership. The Court, therefore, finds that the failure to seek an accounting is not fatal to Fencorp's claims.

Defendants also contend that the breach of contract claims must fail because they fall outside of the partnership agreement. The Court disagrees.

Nothing in the partnership agreements details what will happen if invested monies are not expended on the costs of drilling the wells and overhead. The Court, therefore, finds that the contracts are ambiguous as a matter of law. "If the contract is ambiguous, then the court must construe the disputed language to ascertain the parties' intent. This function involves a question of fact." *Skirvin v. Kidd*, 881 N.E.2d 914, 917 (Ohio Ct. App. 2007). Consequently, this matter is not appropriately decided through summary judgment.

Finally, Defendants assert that the breach of fiduciary duty claims must fail for the same reasons that the breach of contract claims fail. As detailed above, this argument lacks merit. Summary judgment, therefore, is not appropriate on the breach of fiduciary duty claims.

### IV. Conclusion

Based upon the reasons stated herein, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Fencorp's claims under § 12(a)(1) are dismissed.

---

[6] The Court uses the term partnership herein, noting that many of these were joint ventures, because it does not affect the conclusions reached.

Fencorp's claims under § 10(b) survive, along with Fencorp's claims for violations of Ohio's Blue Sky laws, breach of contract, and breach of fiduciary duty.

    IT IS SO ORDERED.


DATED: May 12, 2008                     /s/ John R. Adams
                                            JUDGE JOHN R. ADAMS