ADAMS, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| GREGORY M. NOLFI, etc., et al., ) | **LEAD CASE NO.  5:06CV0260** |
| ) | 5:06CV0506 |
| Plaintiffs, ) | |
| ) | JUDGE JOHN R. ADAMS |
| v. ) | |
| ) | <u>ORDER</u> |
| OHIO KENTUCKY OIL ) | |
| CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

On May 16, 2008, the within matter came on for a telephone conference pursuant to Local Rule 37.1 upon the following:

> 1.)    a letter dated March 21, 2008, with attachments, from Dennis R. Rose, one of the attorneys for plaintiffs;
>
> 2.)    a letter dated March 31, 2008, from Thomas W. Connors, one of the attorneys for defendants;
>
> 3.)    a letter dated April 4, 2008, from Attorney Rose; and
>
> 4.)    a letter dated April 18, 2008, from Attorney Rose.

The conference was adjourned until May 19, 2008, so the Court could hear from Johnnie Y. Spaulding and any other individual involved with the record keeping of defendant Ohio Kentucky Oil Corporation ("Ohio Kentucky").

This action is presently before the Court upon plaintiffs' Memorandum in Support of Discovery Sanctions Pursuant to Fed. R. Civ. P. 37 (Doc. 114). The Court has considered defendants' response (Doc. 115). The Court has also considered the oral arguments of counsel

offered during the hearings held on the record on May 16 and 19, 2008.[1] Plaintiffs move the Court for an order excluding the entire testimony of Mr. Spaulding (including all subjects addressed in his affidavit (Doc. 64-5)) or, in the alternative, for immediate entry of judgment as a matter of law in favor of plaintiffs for the entire case or on plaintiff Fencorp Co.'s Blue Sky non-registration claim upon the grounds that the plaintiffs do not have the documents that were requested in discovery that they would use to rebut defendants' *prima facie* case on the registration claim.

On December 22, 2004, plaintiffs Gregory M. Nolfi, as successor Trustee under the Frederick E. Nonneman Declaration of Trust dated August 19, 1994, as amended, Frederick E. Nonneman, and Rena Nonneman filed a complaint against defendants Ohio Kentucky, Carol L. Campbell, individually, and Carol L. Campbell, as Executrix of the Estate of William M. Griffith, Deceased in the Cuyahoga County, Ohio Common Pleas Court, being Case No. CV-04-550444 (the "Cuyahoga County Action").  The Cuyahoga County Action was not a securities fraud case; rather, the plaintiffs' central theories were undue influence, common law fraud, breach of contract, and breach of fiduciary duty arising from the allegation that over 90% of the oil and gas wells drilled by the defendants resulted in dry holes.  On January 5, 2006, the plaintiffs voluntarily dismissed their Cuyahoga County Complaint without prejudice.

The very next day, on January 6, 2006, the defendants commenced an action in the Stark County, Ohio Common Pleas Court, being Case No. 2006CV00078 (the "Stark County Action"). Defendants sought declaratory relief as to essentially the same allegations raised in the plaintiffs' original Cuyahoga County Complaint.  On February 7, 2006, the plaintiffs filed their Answer and

---

[1] Transcripts (Docs. 95 and 116).

2

Counterclaims in the Stark County Action, reasserting as counterclaims each of the claims originally presented in Cuyahoga County, as well as additional counterclaims premised on violations of the Ohio Blue Sky laws.

Plaintiffs have repeatedly asked the defendants to produce the accredited investor lists, lead lists, sales scripts, "knock lists," index cards, brochures, sample programs, and accredited investor questionnaires (the "Solicitation Evidence").[2] Plaintiffs assert that the Solicitation Evidence is indisputably relevant to the issue of general solicitation[3] and Fencorp's ability to prove its non-registration claim by rebutting defendants' reliance on an Ohio Rev. Code § 1707.03(X)/SEC Rule 506 exemption.

Defendants objected to plaintiffs' First Set of Requests for Production of Documents "to the extent that they relate to transactions which are not the subject of this case on the grounds that such matters are outside of the scope of discovery allowed by Civ. R. 26(B)(1)." Plaintiffs' May 19, 2008 Hearing Ex. 12 at 12. Defendants argue the sanctions requested by the plaintiffs are inapplicable to the case at bar. They maintain that they have not violated any discovery order. Doc. 115 at 2. However, during the hearing held on May 16, 2008, the undersigned stated:

> Well, sir, as to that discrete issue, let me just say, first of all, number one, I think they are -- I think I may have commented on this at our earlier conference.[4] I think they -- they should be produced, but they are discoverable, I think is the better way of characterizing it.

---

[2]*See* Plaintiffs' May 19, 2008 Hearing Ex. 3 at 2, No. 5 (submitted in the Cuyahoga County Action); Ex. 8 at 26, Request No. 14 (submitted in the Stark County Action); and Ex. 11 (plaintiffs' First Set of Requests for Production of Documents submitted in the case at bar) at Nos. 20-25.

[3]The Court previously determined that a genuine issue of material fact exists regarding whether the defendants engaged in a prohibited general solicitation. Memorandum of Opinion (Doc. 78) at 11-12.

[4]On March 14, 2008, the Court held an off-the-record telephone conference.

3

> I do not know, however, whether or not the evidence that you -- that may be gleaned from those depositions, I have some doubt as to whether it is admissible. That is something that will have to further discuss. But the answer to the question is, yes, based upon the claims in the case and the information that I now know of, I believe the information is discoverable, post-2004. Admissible, don't know, and can't tell you as of yet. So I will deal with that issue in that fashion.
>
> \* \* \* \*

Doc. 95 at 15-16.

Defendants argue that "[t]he lead information for the period prior to 2004 was disposed of in 2004 to avoid accidentally violating the FTC's do-not-call regulations and its $11,000 per violation penalty." Doc. 115 at 2.[5] Contrary to defendant's argument, Mr. Spaulding testified during the hearing held on May 19, 2008, that responsive documents do exist for 2001-2003--the critical period in dispute. In response to questions from the undersigned at the May 19, 2008 hearing, Mr. Spaulding testified that paper records of contacts with potential investors kept by agents of Ohio Kentucky are in existence today.

> THE WITNESS: The cards they are referring to are, in fact, not index cards.
> THE COURT: What are they?
> THE WITNESS: They sometimes are little slips of paper. Sometimes they come on card stock.
> The index cards that she made reference to are things that the agents would keep as record of contact. That would go well beyond the lead card.
> THE COURT: And are they in existence today?
> THE WITNESS: Yes, sir.
> THE COURT: So they are in existence today? And who has control and custody of them as we sit here?
> THE WITNESS: That would be the agents.
> THE COURT: The agents?
> THE WITNESS: Correct.
> THE COURT: And they're physically located where, meaning the cards?

---

[5]The destruction of the "knock lists" was raised to the plaintiffs for the first time on March 14, 2008, during the telephone conference. *See* Doc. 95 at 7; Doc. 116 at 47.

> THE WITNESS: The agents would either have them at work or at their residence or wherever they would be.

Doc. 116 at 12.[6] Mr. Spaulding also testified:

> Q. All right. Now, you were asked about a number of -- well, after this destruction or disposal of documents in early 2004, what documents, if any, did you have that contained lead information?
> A. From that time period?
> Q. Yes.
> A. I should have had none. They all should have been destroyed. There may have been some cards paid out from my agents that would have had information on it from people that were contacted in that time frame, but they would have been either interested or players. It would not have been a lead list.
> Q. All right. Those cards that you just referenced, are they in existence presently?
> A. Say again, please.
> Q. Those cards that you just referenced, are they in existence presently?
> A. They could be, yes.
> Q. And where would they be located?
> A. Well, that would be dependent on the agent. I would have to find out if they had any.

*Id.* at 36-37. Mr. Spaulding testified further on examination by defense counsel as follows:

> Q. Lead lists, or -- I understand that that term is not completely correct. Lead information. Did you have -- the lead information that you have at present, did any of that exist -- do you have any documents of that nature that existed for the period 2001 through 2003?
> A. No, sir. Unless it's contained on those records that agents would have kept who were in contact with people at that time who were still in contact with.
> Q. All right. Those pieces of information are described -- describe what the criteria is for that information. Why was that information retained?
> A. It would be retained to show contact, how often they contacted them, what their responses were, if they were interested, if not, if they ever tell us, take us off your list, we are not interested anymore, then that too gets destroyed.

---

[6]*See also id.* at 22 and 43.

> Q. But all of that information, to the best of your knowledge, is still available. The private documentation held by your agents?
> A. I'm certain they have some. I just cannot speak to what.

*Id.* at 41-42. But, Mr. Spaulding never asked the agents to gather the responsive documents.

*Id.* at 44.

> Fed. R. Civ. P. 37 authorizes sanctions that include:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters and evidence; and
> (iii) striking pleadings in whole or in part.

"It has been recognized that '[t]he exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.' *Multimatic, Inc. v. Faurecia Interior Systems USA, Inc.*, 2007 WL 627874 (E.D.Mich. Feb.26, 2007) (citing *Dickenson v. Cardiac & Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976 (6th Cir.2004)." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport*, No. 1:06CV2392, 2008 WL 2074028, at *14 (N.D. Ohio May 14, 2008). In *Bank One, N.A. v. Echo Acceptance Corp.*, No. 04-CV-318, 2008 WL 1766891 (S.D. Ohio April 11, 2008), the district court stated:

> Federal Rule of Civil Procedure 37(c)(1) "mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003). The party facing discovery sanctions bears the burden of proving the harmlessness of its violation. *Id.* This is not a light burden as good faith is not a defense. *Youn v. Track, Inc.*, 324 F.3d 409, 421 (6th Cir. 2003).

*Id.* at *3. The Court holds that the failure to provide documents that are responsive to plaintiffs' First Set of Requests for Production of Documents at Nos. 20-25 submitted in the case at bar is not substantially justified or harmless. As detailed above, the defendants failed to even

6

investigate the existence of documents that would have been responsive to discovery requests. The Court does not impose sanctions lightly. The underlying misconduct, however, warrants it. Accordingly, the Court sanctions the defendants by finding as a matter of law that Ohio Kentucky engaged in a prohibited general solicitation in the case at bar. The exemption under Rule 506, therefore, is not applicable.

    IT IS SO ORDERED.

| | |
|---|---|
| *May 28, 2008* | */s/ John R. Adams* |
| Date | John R. Adams |
| | U.S. District Judge |